UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERNEST BUSTOS, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | |
| GREGG A. DENNIS, d/b/a IIS BENEFIT ADMINISTRATORS, INVESTMENT INSURANCE SERVICES, INC., d/b/a IIS BENEFIT ADMINISTRATORS, SOUTHERN NEVADA BENEFIT ADMINSITRATORS LLC, | § § § § § § § § § | Civil Action No. SA-17-CV-39-XR |
| *Defendants*. | | |

**ORDER**

By Order Granting Defendants' Motion to Transfer (Docket no. 16) entered March 17, 2017, this case was transferred to the U.S. District Court for the District of Nevada. Now before the Court is Plaintiff's Motion to Amend Findings and Reconsider Ruling on Transfer (Docket nos. 18, 20) and Defendants' Response to Plaintiff's Motion (Docket no. 22). After careful consideration, the motion to amend and reconsider is DISMISSED for lack of jurisdiction.

**BACKGROUND**[1]

Plaintiff Ernest Bustos, a citizen of Texas, filed his original petition in this breach of contract action in state court on January 14, 2016, and Defendant Dennis removed the case to

---

[1] With minor alterations, the Court adopts the background facts from its original Order Granting Defendants' Motion to Transfer. Docket no. 16. In his present motion, however, Plaintiff argues that "[t]he Court makes a number of purported findings that are not supported by the record and should not be taken to be established for future proceedings in this case." Docket no. 18 at 1. Plaintiff disputes six specific statements from the Court's original transfer order. Here, the Court will note Plaintiff's objections in footnotes. Ultimately, these objections are irrelevant to the underlying legal question of whether the Court can or should revisit its decision to transfer this case.

1

federal court on January 20, 2017. Docket nos. 1, 1-2. Plaintiff has since filed an amended complaint, in which he alleges that all defendants are citizens of Nevada. Docket no. 9.

In his live complaint, Plaintiff alleges that he entered into an insurance distribution contract[2] with Defendants in 2015. Docket no. 9 at 5. Plaintiff alleges that he "was to act as an independent contractor for marketing and selling" Defendants' "Tri-Funding" insurance products. *Id.* at 4–5. Based on Plaintiff's allegations, the contract describes a hierarchical sales model[3] and multi-level marketing distribution scheme,[4] which would allow Plaintiff to enlist others to sell the insurance products.[5] *Id.* According to Plaintiff, the contract stipulated that he would receive training and on-going support throughout the contract term. *Id.* at 7–8. Plaintiff alleges that rather than helping him develop his "distribution system of agents,"[6] Defendants

---

[2] Plaintiff's Objection 1: Plaintiff contends that the contract does not mention "insurance distribution," Docket no. 18 at 3, but the contract is entitled, "IIS [Investment Insurance Services] Benefits Distribution Contract." Docket no. 9, Exhibit A.

[3] Plaintiff's Objection 2: Plaintiff disagrees with the Court's use of the term "hierarchical sales model." Docket no. 18 at 3–5. In his First Amended Complaint, Plaintiff states, "[i]n 2015, Bustos met Dennis, who was marketing his [Product] in the State of Texas . . . Dennis, Investment and Southern market and sell the Product through contracts with independent contractor agents. Those agents receive commissions in various forms based on sales of the Product and employees using the product . . . Bustos in turn has developed and has access to a network of personnel who sold insurance." Docket no. 9 at 4–5. Plaintiff is correct that he does not use the exact phrase "hierarchical sales model"; however, where Plaintiff states that a distributor solicits Plaintiff to sell a product, and Plaintiff in turn solicits a "distribution system of agents" to sell the product to consumers, Plaintiff has described a hierarchy. Nevertheless, the transfer analysis does not turn on this fact because the specific business arrangement at the heart of the contract does not affect the enforceability of a valid forum-selection clause.

[4] Plaintiff's Objection 3: Plaintiff disagrees with the use of the term "multi-level marketing distribution scheme." Docket no. 18 at 4. As discussed in more detail in footnote 4 *supra*, this term is simply a generalized summary of the more detailed description in the First Amended Complaint. Furthermore, this precise language does not affect the underlying propriety of transfer.

[5] Plaintiff's Objection 4: Plaintiff objects to this phrase as well, but it is unclear why. Docket no. 18 at 4–5. He argues that "[the Contract] states only that Bustos would be 'allowed' to hire others who were already marketing the IIS products." *Id.* Minus the Court's use of the term "enlist" in place of "hire," Plaintiff's own characterization of the facts is wholly consistent with the Court's language.

[6] Plaintiff's Objection 5: Plaintiff objects to the Court's characterization of the help that Defendants were to provide under the contract. Docket no. 18 at 5. Plaintiff argues that Defendants were to provide technical training with respect to the product to be sold rather than assistance to Plaintiff in recruiting his agents. Docket no. 18 at 5. "[D]evelop his distribution system of agents" can have either meaning; for clarity, the Court points out that Plaintiff's meaning of providing technical training is intended.

ignored him and instead engaged in dealings with an unlicensed third-party that recruited others who might have otherwise joined Plaintiff's distribution system.[7] *Id*. at 8.

After removing to this Court, Defendant Dennis filed a motion to transfer venue under 28 U.S.C. § 1404(a) on January 27, 2017. Docket no. 5. Dennis bases the motion on a forum-selection clause in the contract which states: "[a]ny litigation proceeding will be governed by and in the State of Nevada." Docket no. 5 at 2. Plaintiff filed his opposition to transfer on February 13, and Dennis replied on February 24. Docket nos. 10, 13.

The Court granted the Motion to Transfer Venue on March 17, 2017. Docket no. 16. The case was closed that day and transferred from the Western District of Texas to the District of Nevada, where a new file was opened on March 20, 2017. Docket no. 17; *Bustos v. Dennis, et al.*, Case no. 2:17-CV-00822-KJD-VCJ (D. Nev. March 20, 2017). On April 3, 2017, Plaintiff filed a motion to amend and reconsider this Court's March 17 order granting transfer to Nevada. Docket nos. 18, 20.[8]

## DISCUSSION

**I. This Court lost jurisdiction to hear this case once transfer to the District of Nevada was complete.**

"It seems uncontroversial . . . that a transfer to another circuit removes the case from our jurisdiction, and numerous circuits have stated that rule plainly." *In re Red Barn Motors, Inc.*,

---

[7] Plaintiff's Objection 6: Plaintiff objects that the Court left out details of his allegations—"The Court's finding omits the essential allegations that take the claims beyond 'ignoring' Bustos. Bustos had agreements with Richard Wilson, the 'unlicensed third party", [sic] to participate in Bustos' marketing and sales of the Product, including by recruiting others to do so. By withholding the initial training and support to Bustos and instead providing that contact to Mr. Wilson, [Defendants] benefitted others and damages Bustos." *Id*. The Court's original description, however, states that Defendants "ignored [Plaintiff] *and instead engaged in dealings with an unlicensed third-party*." Minus Richard Wilson's name, the Court's description simply summarizes a generalized version of Plaintiff's allegations.

[8] After Plaintiff filed his initial motion to reconsider, the Clerk's Office issued a deficiency notice because the motion lacked a proposed order. Docket nos. 18, 19. Plaintiff then re-filed the same motion with a proposed order attached. Docket no. 20. The two motions are otherwise the same.

794 F.3d 481, 484 (5th Cir. 2015). In addition, "[i]t is well established that '[o]nce the files in a case are transferred physically to the court in the transferee district, the transferor court loses all jurisdiction over the case, including the power to review the transfer.'" *Auto. Body Parts Ass'n. v. Ford Glob. Techs., LLC.*, 2015 WL 1517524, at *1 (E.D. Tex. Apr. 2, 2015) (quoting *Schwartz v. Curtis*, 2008 WL 4467560, at *1 (S.D. Tex. Oct. 2, 2008)); *see also Chrysler County Corp v. Country Chrysler, Inc.*, 928 F.2d 1509, 1517 (10th Cir. 1991) ("The date the papers in the transferred case are docketed in the transferee court . . . forms the effective date that jurisdiction in the transferor court is terminated.").

The Fifth Circuit addressed this question in *In re Sw. Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963). There, the district court granted the defendants' motion to transfer at a hearing where both parties were present. *Id.* Three days later, the Northern District of Texas transferred the case to the District of Colorado. *Id.* Then, two days after the case had been transferred and docketed in the transferor court, the party opposed to transfer filed a motion for leave to file a petition for mandamus. *Id.* As another court said of the decision in *Sw. Mobile Homes*, "the Fifth Circuit noted that the petitioner had not seasonably moved for a stay within which to seek review of the transfer," and that the district court had lost jurisdiction. *Auto. Body Parts*, 2015 WL 1517524, at *2 ("[I]t was 'extremely doubtful' whether the Fifth Circuit still 'ha[d] the power to compel the District Judge to vacate his order transferring the action.'"); *see also March v. ABM Sec. Servs., Inc.*, 2010 WL 148405, *1 (S.D. Tex. Jan. 12, 2010) (holding that the court lacked jurisdiction to consider Plaintiff's motion for reconsideration of a decision to transfer because the record had already been transmitted to the transferor court).

Here, this Court granted the motion to transfer on March 17 and transferred the case on March 21. Plaintiff did not file his motion to reconsider until April 3—thirteen days after the

transfer—and never moved to stay the transfer order. Docket nos. 16, 17, 18. The case was transferred and docketed in the District of Nevada weeks before Plaintiff took any action with respect to this Court's transfer decision. Accordingly, Plaintiff's motion to reconsider is dismissed because the Court lacks jurisdiction to reconsider its transfer.

**II.    The underlying decision to transfer the case was correct.**

Even if this Court had jurisdiction to consider Plaintiff's motion for reconsideration, the Court would not alter its ruling. Plaintiff contends that the forum-selection clause ("Any litigation proceeding will be governed by and in the State of Nevada") is permissive, and argues that the Court misapplied the relevant transfer factors under 28 U.S.C. § 1404(a). The Court disagrees on both points

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As will be explained, the normal § 1404(a) analysis involves an inquiry into private interest factors and public interest factors. But this normal analysis changes significantly where there is a valid forum-selection clause. Thus, the Court will first re-examine the forum-selection clause in this case and then re-examine the § 1404(a) analysis in light of that clause.

**a.  The forum-selection clause is mandatory.**

Forum-selection clauses are presumptively valid and enforceable, and should "be given controlling weight in all but the most exceptional circumstances." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013) (internal quotations omitted); *see also Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). To be mandatory, a forum-selection clause must show that the parties intended the named location to serve as the forum for

disputes arising out of the contract. *See Caldas & Sons v. Willinghan*, 17 F.3d 123, 128 (5th Cir. 1994).

In the previous transfer order, the Court fully analyzed the forum-selection clause. The clause reads: "*Any* disagreement arising from the contract will be governed *by and in* the State of Nevada." Docket no. 9, Exhibit A (emphasis added). The phrase "governed by . . . the State of Nevada" unambiguously specifies which laws will be applied to any disagreement arising out of the distribution contract. The phrase "*in* the State of Nevada" unambiguously specifies that the State of Nevada will be the forum for any disputes arising from that contract.

In reaching these conclusions, the Court previously analogized to a clause reading "[a]ny dispute arising must be treated before the London Court of Justice," which the Supreme Court found to be mandatory. *M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 2 (1972). This Court reasoned that "the word 'any' indicates that all parties and all claims are included in the forum selection clause." Docket no. 16 at 4. Notably, Plaintiff does not discuss this comparison or *M/S Breman* in his motion for reconsideration. Though he attacks the Court's conclusion in this case because the forum-selection clause lacks exclusive language such as "exclusive, sole, or only," the same was true of the clause in *M/S Breman*. Despite the omission of these words of exclusivity, the Supreme Court found that "the language of the clause [was] clearly mandatory and all-encompassing." *M/S Breman*, 407 U.S. at 20.

Plaintiff argues that the forum-selection clause in this case is permissive because it lacks language of exclusivity. Docket no. 18 at 7 (citing *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 500 (10th Cir. 2002)). Plaintiff analogizes the forum-selection clause in this case to that in *K & V Scientific,* which read, "[j]urisdiction for all and any disputes arising out of or in connection with this agreement is Munich. All and any

6

disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany." 314 F.3d at 496. The court in *K & V Scientific* found the clause permissive because it lacked exclusive terms and refers only to jurisdiction. However, the court merely listed the terms "exclusive, sole, or only" as examples of exclusive language, and did not intend these three terms to represent an exhaustive list of words that must be included in order for a forum-selection clause to be mandatory. *Id.* at 500 (prefacing the list of "exclusive terms" with "e.g.," indicating that these three words were examples of terms that *could* be used).

Furthermore, Plaintiff distinguishes the clause here from that in *Link America, LLC v. Infovista Corp.*, No. 3:16-CV-452-M, 2016 WL 3406114, at *1 (N.D. Tex. June 21, 2016), which read "any dispute or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof shall be subject to the exclusive jurisdiction of the Massachusetts state and federal courts." The court reasoned that the inclusion of the word "exclusive" in the phrase "shall be subject to the *exclusive* jurisdiction of the Massachusetts state and federal courts" made the forum-selection clause mandatory because "[t]he words 'shall have jurisdiction' are not by themselves sufficient for a forum-selection clause to be considered mandatory." *Id*. at *2. But because the language here ("any dispute . . . *will be governed* . . .") is distinct from that analyzed in *Link America* ("shall have jurisdiction"), the reasoning with respect to the addition of the word "exclusive" is inapplicable in the present case.

Plaintiff's analyses of these forum-selection clauses are selective. Plaintiff emphasizes certain features of the clauses while ignoring others. For example, Plaintiff analogizes to the permissive clause in *K & V Scientific*, which spoke in terms of "[j]urisdiction for all and any disputes," but ignores that the clause here simply refers to disputes without limiting itself to jurisdiction. Similarly, Plaintiff notes that the clause in *Link America* contained exclusive

language and was found to be mandatory; he omits that the clause was couched in terms of whether a certain court "shall have jurisdiction," which is not the language or structure of the forum-selection clause in this case. Assuming *arguendo* that the Court had jurisdiction to reconsider its previous transfer order, the Court would find that the clause is mandatory.[9]

  b. **Plaintiff presents no arguments for why the forum-selection clause is unreasonable.**

Plaintiff's motion for reconsideration argues that "[t]o begin with, the Court makes no determination that the Contract clause as interpreted by the Court was reasonable under the circumstances." Docket no. 18 at 9. As noted in the original transfer order, though, "Plaintiff [did] not argue that the clause was unreasonable." Docket no. 16 at 4. This previous statement holds true even on the motion for reconsideration. Plaintiff has not presented any arguments for why the forum-selection clause here is unreasonable, and the record reveals no circumstances indicating that this is the case. The clause, which appears in a commercial contract, designates the home of one of the parties as the exclusive forum, and as such, it is reasonable.

  c. **The Court correctly conducted the transfer of venue analysis in light of *Atlantic Marine*.**

When conducting a transfer of venue analysis in normal circumstances, a court should consider the plaintiff's choice of venue, private interest factors, and "various public interest considerations." *Atlantic Marine*, 134 S. Ct. at 582. Private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

---

[9] Plaintiff argues that the contract language is ambiguous and should therefore be construed against the drafter (the Defendants here). Docket no. 18 at 9. He argues that "[c]ontrary to the Court's reading, without the specification of 'courts' the geographic reference (State of Nevada) actually means no venue, not all or any venue." *Id*. at 9. A court should only construe the clause against the drafter "[w]hen . . . confronted with two opposing, yet reasonable, interpretations of the same contract provision." *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 957 (quoting *Tenneco, Inc. v. Greater LaFourche Port Comm'n*, 427 F.2d 1061, 1065 (5th Cir. 1970)). Plaintiff's interpretation is not reasonable in light of the foregoing analysis.

practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). Public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.

When a party moves to transfer based on a valid forum-selection clause, however, the typical § 1404(a) analysis changes, such that private interest factors are deemed to weigh in favor of the preselected forum. *Atlantic Marine*, 134 S. Ct. at 583. Because the forum-selection clause is valid, the adjusted analysis is appropriate here. Under this analysis, the Court previously found that transfer was appropriate, and the Court does not find to the contrary on the basis of Plaintiff's present arguments.

### 1. The Court correctly analyzed the private interest factors.

Plaintiff lists several private interest factors that favor venue being in Texas. Docket no. 18 at 10. Plaintiff ignores, however, that the Supreme Court in *Atlantic Marine* held that parties' private interests are deemed to weigh in favor of transfer in the face of a valid forum-selection clause:

> [A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

134 S. Ct. at 582; *see also In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014) ("*Atlantic Marine* alters the normal section 1404 analysis. As is most relevant here, the district court cannot independently weigh the parties' private interests, but must deem such interests to weigh in

9

favor of the preselected forum, the parties having struck that balance by their selection contract."). In accordance with *Atlantic Marine*, because the Court has found that the forum-selection clause is valid, the private interest factors all weigh in favor of the preselected forum.

**2. The Court correctly analyzed the public interest factors.**

Plaintiff also argues that "the Court's discussion of the 'public interest factors' inappropriately diminishes the interest of Texas in the controversy between Bustos and the Defendants." Docket no. 18 at 11 (citations omitted). Though his argument is not clear, Plaintiff appears to argue specifically that the public interest factor of Texas' local interest in having localized interests decided at home warrants venue being in Texas, and alludes to facts set forth in his initial response to Defendants' motion to transfer venue. *See* Docket no. 10 at 8 ("[T]he central witnesses with relevant, material knowledge of the overall dispute, including the tortious interference causes of action, both reside in Texas. They are nonparties who will be inconvenienced by the change in venue. They also may very well be beyond compulsory process for trial testimony. Their testimony also could prove crucial to the assessment of credibility between the Plaintiff and Dennis."). Plaintiff adds that to the extent that the contract at issue contemplates sales of insurance, these sales implicate Texas public policy. Docket no. 18 at 11.

These arguments fail for numerous reasons. First, Plaintiff conflates several of the private interest factors that are already deemed to weigh in favor of transfer (such as the availability of compulsory process) with public interest factors that may still be considered in opposition to transfer. Second, Plaintiff's argument that this case uniquely implicates Texas public policy through insurance markets is belied by his live complaint, which alleges that the parties entered into a contract for Plaintiff "to sell and market the 'IIS Benefits Administrators Tri-Funding Product' in Texas *and elsewhere*." Docket no. 9 at 4 (emphasis added). Third, Plaintiff's attempt

to analogize to *Volkswagen II*, 545 F.3d at 317–18, overlooks that Defendants are Nevada citizens and understates the strength of the local interests in that case.[10] And finally, even assuming that one of the four public interest factors favors venue being in Texas, the § 1404(a) analysis is a multi-factor balancing test, and this one factor alone does not carry the day in this case. "In all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain," as reflected in a valid forum-selection clause. *Atlantic Marine*, 134 S. Ct. at 583. This contract dispute between parties in Texas and Nevada is not among the most unusual cases.

## CONCLUSION

This Court lacks jurisdiction to consider Plaintiff's Motion for Reconsideration. (Docket nos. 18, 20). Alternatively, even assuming that the Court had jurisdiction to reconsider its initial decision to transfer this case to the District of Nevada, it would deny such a request. Accordingly, the Court DISMISSES the motion.

It is so ORDERED.

SIGNED this 8th day of May, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[10] The Court's previous order explained the differences between the present case and *Volkswagen II*, and Plaintiff's present arguments do not change this analysis:

> [In *Volkswagen II*], the court found that [the local interest factor] weighed in favor of transfer to Dallas where "the accident occurred on a freeway in Dallas, Texas; Dallas residents witnessed the accident; Dallas police and paramedics responded and took action; a Dallas doctor performed the autopsy; the third-party defendant lives in Dallas county, Texas; none of the plaintiffs live in the Marshall Division; no known party or non-party witness lives in the Marshall Division; no known source of proof is located in the Marshall Division; and none of the fact giving rise to this suit occurred in the Marshall Division." 545 F.3d at 317–18. Here, Plaintiff does not allege that a similarly strong local interest exists. Plaintiff alleges only that he sold insurance in Texas, that the contract was formed on the basis of meetings that occurred in Texas, and that the Defendants do business in Texas. Docket nos. 9, 10.

Docket no. 16 at 7, n. 2.